THE FIRST NATIONAL BANK OF DUQUOIN

*v.*

WILLIAM S. KEITH.

183  475
99a ¹331

*Opinion filed December 18, 1899—Rehearing denied February 16, 1900.*

1. MUNICIPAL CORPORATIONS—*when city may change date of fiscal year.* A city may, by ordinance, change the date of the fiscal year as fixed by an earlier ordinance, in order to make it begin on the day of the city election, as provided in section 1 of article 7 of the City and Village act, provided the change does not have the effect of making more than one fiscal year out of each current year.

2. BILLS AND NOTES—*what not a defense to a check by city treasurer for water-works construction.* That the fund against which is drawn a check to pay for constructing water-works contains no money raised by general taxation, which was the method provided in the ordinance for raising the money required, is no defense to the check, where the fund contains a sufficient amount, derived from the authorized sale of water-works construction bonds, to meet it.

3. SAME—*when check operates as an assignment pro tanto of the fund.* A check accepted by a contractor from the city treasurer upon surrendering a city warrant in his favor which he was entitled to have paid, operates as an assignment *pro tanto* of the fund against which it is drawn.

4. SAME—*when existence of bona fide assignment is not material.* That the transfer of a check by the payee to a third person is not a *bona fide* assignment does not authorize the drawer to countermand payment, nor the bank to obey his order, where there is no defense to the check as against the payee.

*First Nat. Bank v. Keith,* 84 Ill. App. 103, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Perry county; the Hon. M. W. SCHAEFER, Judge, presiding.

GEORGE W. WALL, and BENJAMIN W. POPE, for appellant.

W. W. CLEMENS, and W. A. SCHWARTZ, (S. H. REID, and I. R. SPILMAN, of counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

The Appellate Court has affirmed a judgment of the circuit court of Perry county, recovered by the appellee, Keith, against the appellant bank, in an action of assumpsit on a check drawn by the city treasurer of the city of DuQuoin on the bank, which check had been assigned to Keith. The city of DuQuoin owed H. A. Keith & Co. $4000 under a contract for a reservoir, pumping station and machinery for water-works purposes, and duly issued to them its warrant on its treasurer for that amount as allowed by the city council, payable out of its water-works fund. The treasurer did not keep the moneys of the city in separate funds, but had on deposit in the bank, of the funds of the city derived from all sources, more than double the amount of the warrant, and of which deposit there were moneys which had been derived from the sale by the city of its water-works bonds theretofore issued and sold, more than sufficient to pay the warrant, but no part of such deposit had been raised or collected from general taxation. When the warrant was presented the treasurer directed the holder to the bank for payment, it having been the custom of the bank to pay and take up the city warrants for the treasurer. But the bank refused to pay this warrant, and thereupon the holder, H. A. Keith & Co., endorsed it and delivered it to the treasurer, who gave therefor his check on the bank for the same amount, which check,

in due course of assignment, came to appellee. Although the city funds in the bank remained the same, the bank, on presentation of the check, refused, upon the advice of the drawer, the city treasurer, to pay it, and appellee then brought this suit to recover the amount from the bank.

Various defenses were set up by special pleas, and are presented here by errors assigned upon the rulings of the trial court upon demurrers to the pleas and upon propositions of law offered on the trial, a jury having been waived. We shall deal with the legal principles upon which these defenses are based, without regard to the question whether they were invoked by demurrer or propositions of law. It seems to be conceded that from the facts the bank could make the same defense to the suit that it could have made had the suit been brought by the payee. We shall therefore consider whether or not any sufficient defense to the payment of the check appears from the record.

It is first contended that the contract under which the work was done and the warrant issued was illegal and void, and consequently conferred on Keith & Co. no rights whatever; that it created no liability against the city, and that the drawer of the check, the city treasurer, properly countermanded, and the bank properly refused, payment. The facts which appellant claims establish the illegality of the contract are not in dispute, and are substantially as follows: On June 11, 1897, the city council passed an ordinance providing that the fiscal year should begin August 1 each year and end July 31 of the succeeding year, and in September following passed the annual appropriation ordinance for the current fiscal year, appropriating, among other sums, $3500 for water works. An ordinance had been passed granting a franchise to one Blakesbee to construct a system of water works, but failing to construct the same he forfeited his franchise, and on February 2, 1898, another ordinance was

passed for the construction of a system of water-works by the city, and providing that "the said dam, reservoir, pumping station and machinery shall be paid for by the city with funds hereafter to be raised for that purpose by general taxation." On February 11, 1898, a contract was made between the city and Keith & Co., by which they agreed to construct the reservoir, pumping station, etc., for $12,408. In April, 1898, the city paid Keith & Co. $3000 for work done under this contract. On May 20, 1898, the city council passed an ordinance, to take effect at once, purporting to amend the ordinance of June 11, 1897. The amendatory ordinance provided that the fiscal year should begin on the day established by law for the election of municipal officers and end on the day before such election the following year, and repealed all ordinances inconsistent with it, and on June 10, 1898, passed its annual appropriation ordinance, appropriating, among other sums, $9408 for water-works. Afterward, in July, 1898, the city entered into another contract with Keith & Co. to complete the dam, reservoir, pumping station, etc., for $9408, which sum seems to have been the same amount as remained unpaid upon the first contract, and counsel for the appellant state that the second contract with Keith & Co. was made because at the time of the making of the first one no appropriation for the purpose had been made, and without such appropriation the city had no power to make such a contract. But whatever the reason may have been for the making of the second contract, that alone, and not the first contract, is in controversy here.

Section 1 of article 7 of the act for the incorporation of cities and villages provides that the fiscal year shall commence at the date established by law for the annual election of municipal officers therein, or at such other times as may be fixed by ordinance, and section 2 provides: "The city council of cities * * * shall, within the first quarter of each fiscal year, pass an ordinance,

to be termed the annual appropriation bill, in which such corporate authorities may appropriate such sum or sums of money as may be deemed necessary to defray all necessary expenses and liabilities of such corporation; and in such ordinance shall specify the objects and purposes for which such appropriations are made, and the amount appropriated for each object or purpose. No further appropriations shall be made at any other time within such fiscal year, unless the proposition to make each appropriation has been first sanctioned by a majority of the legal voters of such city or village, either by a petition signed by them, or at a general or special election duly called therefor." And section 4 provides: "No contract shall be hereafter made by the city council or board of trustees or any committee or member thereof; and no expense shall be incurred by any of the officers or departments of the corporation, whether the object of the expenditure shall have been ordered by the city council or board of trustees or not, unless an appropriation shall have been previously made concerning such expense, except as herein otherwise expressly provided."

Now, it is said by appellant that the city, having by its ordinance of June 11, 1897, established the fiscal year to begin August 1 and end July 31 of the next year, could pass but one appropriation ordinance during such fiscal year, and that as the appropriation ordinance of June 10, 1898, was the second one so passed, it was void, and the contract made under it was also void. But if the ordinance of May 20, 1898, changing the fiscal year so that it should begin on the day of the annual election and end on the day before the next annual election of city officers, was valid, then said appropriation ordinance of June 10, 1898, was also valid because passed during the first quarter of the fiscal year as so changed, and not during the last quarter of the previous fiscal year. We see no reason why the city council of 1898 did not have power to enact the ordinance of May 20. The effect of the ordi-

nance was to repeal the former provision establishing the fiscal year as beginning August 1, and to leave it, as established by the statute, to begin on the day of the city election. Appellant's position is, that the council having once fixed the fiscal year no change could be made by any subsequent council. But we are of the opinion that the hands of the city could not thus be tied so as to be unable to meet future necessities arising in municipal administration. It is doubtless true that such changes could not be made and the fiscal year so shortened as to increase the number of appropriation ordinances, for there could be but one such ordinance each year. But the power to change the beginning of the fiscal year is clearly conferred on the council by said section 1 of article 7, and it could not be changed without either shortening or lengthening some one fiscal year. It was held in *Swarth* v. *People ex rel.* 109 Ill. 621, that an ordinance changing the municipal year was valid. As the ordinance did not have the effect of making two fiscal years out of one, nor of making more than one fiscal year out of each current year, and was passed in the exercise of power conferred by the statute, we are of the opinion it is valid. In *Fuller* v. *Heath*, 89 Ill. 296, such an ordinance was held valid. It follows that the appropriation ordinance of June 10, 1898, and the subsequent contract with Keith & Co., were not invalid for the reason urged.

The next position assumed by appellant is, that the fund upon which the check was drawn contained no moneys derived from general taxation, and, inasmuch as the ordinance for the construction of the system of water-works provided it should be paid for "with funds hereafter raised for that purpose by general taxation," the fund in question could not be so appropriated. But it appears that the city duly authorized, issued and sold its bonds for the construction of water-works, and the fund in question contained, of the proceeds of such sale of bonds, more than sufficient to pay the warrant or the

check. These bonds would be payable from funds derived from taxation, and we are of the opinion that the fund in question might lawfully be applied in payment of the demand sued for.

Other questions as to the validity of the contract with Keith & Co. have been raised, and we have considered them, but as they were of minor importance it is sufficient to say that they do not affect the validity of the contract.

It follows from what has been said that the city itself would have had no defense, so far as disclosed by the record, to a suit to recover this money. What defense, then, could the mere custodian of the fund have against a check drawn on such fund in satisfaction of the warrant? Upon this point appellant's argument is, that the check did not operate as an assignment *pro tanto* of the fund upon which it was drawn, and the drawer having notified the bank not to pay, no action could be sustained against the bank, the drawee. It was the duty of the treasurer to pay the warrant drawn on him by the proper authorities, and he could have been compelled to do so. He took up the warrant and gave his check for the amount of it on the bank having on deposit the moneys out of which it was payable. Keith & Co. accepted the check and surrendered their warrant, and the effect was an assignment to the payee of so much of the fund as the check called for, and which the bank must be held to have agreed to pay on presentation if sufficient of such fund remained on deposit with which to pay it. (*Munn* v. *Burch*, 25 Ill. 21.) We find nothing in the circumstances of this case to take it out of the general rule adopted in this State in the *Munn* case, and ever since adhered to, that the check operates as an assignment of the fund *pro tanto*, and that the holder may sue the bank at law and recover the amount. We regard it as immaterial whether there was a *bona fide* assignment of the check to an innocent holder or not, for the reason there was no

183—31

defense against its payment in the hands of the payee. We have held that after a check has passed into the hands of a *bona fide* holder payment cannot be counter-manded by the drawer, (*Union Nat. Bank* v. *Oceana County Bank*, 80 Ill. 212,) and it follows that if there is no defense to the check in the hands of the payee he stands in as safe a position as his assignee would, and the maker can not undo the transaction by notifying the bank not to pay. Such a result follows from the doctrine recognized in, and re-affirmed by a long line of cases subsequent to, *Munn* v. *Burch, supra,* that the check is an assignment to the holder of so much of the fund on deposit as the check calls for, and that payment may be enforced against the bank in a suit at law on the check, if, when presented, the bank has on deposit sufficient of the funds of the drawer to pay it. The city of DuQuoin itself would have had no power, under the facts in this case, to counter-mand payment, and it is difficult to see that such power resided in the treasurer.

The rulings of the courts below were in harmony with these views, and the judgment of the Appellate Court will be affirmed.        · *Judgment affirmed.*