99 327
209s ²165

## W. T. Westbrook et al. v. John P. Middlecoff et al.

1. Municipal Corporations—*Limitations upon Corporate Action.* —While courts should maintain with vigor the limitations which the statute has placed upon corporate action whenever it is a question of restraining a city council in advance, from passing beyond the bounds of statutory requirement, they should, on the other hand, enforce against

the city, contracts of which it has received the benefits, if the subject-matter of the contract falls within the chartered powers of the city.

2. SAME—*When the Statute Regulates the Manner of the Exercise of Corporate Action—Estoppel.*—Where the statute authorizes a municipal corporation to exercise a certain power but specifically regulates the mode in which it is to be exercised, an attempt on the part of municipal officers to override the regulations of the statute and exercise it in another manner will be restrained; but when the officers have so acted, and the municipality has received the benefits of a contract thus irregularly entered into, it will be estopped from setting up the irregular exercise of the power when called upon to pay for what it has received.

**Bill for an Injunction.**—Appeal from the Circuit Court of Ford County; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at May term, 1901. Affirmed. Mr. Justice BURROUGHS, dissenting. Opinion filed December 10, 1901.

KERR & LINDLEY and MORRIS & HOOPER, attorneys for appellants.

R. L. SCHNEIDER, city attorney, GERE & PHILLBRICK, and C. E. BEACH, attorneys for appellees; JOSEPH J. THOMPSON and JOHN E. POLLOCK, of counsel.

MR. JUSTICE HARKER delivered the opinion of the court.

This was a bill in equity filed in the Circuit Court by appellants, taxpayers in the city of Paxton, to enjoin the payment out of city funds, of $920.86, to John P. Middlecoff, in pursuance of a resolution of the city council directing the city clerk to issue a city warrant in favor of Middlecoff for that sum. A temporary injunction, as prayed for in the bill, was granted, but upon a hearing of the cause the injunction was dissolved and the bill dismissed at the cost of appellants.

It appears from the pleadings and proofs presented upon the hearing that on the 3d of July, 1899, the city council passed its annual appropriation ordinance and at the same time passed a resolution reciting the need of a city building, suitable for a council chamber, fire department quarters, police court room and a calaboose, and providing for a committee of three aldermen, who, with the mayor, should make estimates as to dimensions, requirements and cost of such building. Middlecoff was at that time mayor.

On August 7, 1899, the committee appointed reported that the cost of the building would be about $4,000, and that there were funds in the city treasury, which had been paid in on account of liquor license, which could be used for that purpose. The committee also reported favorably on plans submitted by an architect from Bloomington. The report was adopted, the committee was by resolution of the city council instructed to advertise for bids for the erection of the building on the plans adopted, and there was appropriated $4,500 out of the contingent fund then in the hands of the city treasurer for construction.

On September 4, 1899, the committee reported various bids and were, by resolution of the council, directed to accept the bid of N. P. Neilson. The committee did as directed, a contract was made, and the building was constructed at a cost of $5,421.55. The city treasurer paid out on orders of the building committee all the contingent fund on hand, amounting to $4,500.59, leaving a balance of $920.86 to complete the building. Middlecoff suggested to the city council that he would advance the money to pay the indebtedness and be repaid out of the annual appropriation for the next year, which he accordingly did, and the work went on. The building was completed and accepted April 1, 1900, and has been occupied by the city ever since.

On April 2, 1900, the city council, after approving a report of the building committee showing the complete cost of the building, etc., passed a resolution, reciting an indebtedness to Middlecoff of $920.69, by reason of the advancement mentioned, and directing the city clerk, after the adoption of the appropriations and levy ordinances of 1900, to issue a warrant in favor of Middlecoff for that sum.

To enjoin the issuance of such order and the payment of that sum this bill was presented July 2d of that year, and the temporary injunction allowed. On the same day the council passed its annual appropriation ordinance and provided for the payment of Middlecoff out of the taxes of that year.

There is no evidence, or charge, even, that there was any fraud or extravagant expenditure of money. From aught

that appears in the record the building is fully worth its cost of construction, $5,421.55. Appellants' sole claim of right to an injunction is that the annual appropriation ordinance of 1899 did not provide for the funds to pay for the building. That the city council realized the needs of a city building is evidenced by its resolution of July 3, 1899, and it was within its statutory power to enter into a contract for its construction.

The council was invested with the power to contract through a committee, just as was done. That is not disputed, but it is contended that no appropriation for the erection of the building by the annual appropriation ordinance of 1899 having been made, and no appropriation having been sanctioned by a majority of the legal voters of the city, either by petition or by vote at an election, the council was prohibited by the statute from entering into any contract creating any liability, or paying out any of the funds of the city for or on account of the construction of the building, and that the resolution directing the clerk to issue a warrant in favor of Middlecoff for the sum already paid out by him is void.

While courts should maintain with vigor the limitations which the statute has placed upon corporate action, whenever it is a question of restraining a city council in advance from passing beyond the bounds of statutory requirement, they should, on the other hand, enforce against the city, contracts of which it has received the benefit, if the subject-matter of the contract falls within the charter powers of the city.

Where the statute authorizes a municipal corporation to exercise a certain power, but specifically regulates the mode in which it may be exercised, an attempt on the part of the municipal officers to override the regulations and exercise it in another manner will be restrained; but when the officers have so acted, and the municipality has received the benefits of a contract thus irregularly entered into, it is estopped from setting up the irregular exercise of the power when called upon to pay for what it has received. East St. Louis v.

East St. Louis Gas Light Co., 98 Ill. 415; Badger et al. v. Inlet Drainage Co., 141 Ill. 540; Bradley v. Ballard, 55 Ill. 413; First National Bank v. Keith, 183 Ill. 475; Village of Harvey v. Wilson, 78 Ill. App. 544; Dillon's Municipal Corporations, Sec. 444, etc.

The proposition is thus tersely stated by Justice Scholfield in Badger et al. v. Inlet Drainage Co.:

" The doing of the thing in a proper way is a legitimate charge upon the revenues of the municipality; and so when it is done and is accepted and enjoyed by the municipality, the municipality gets what it had authority to get in a different way, and it should therefore pay for it what it would have paid, had it got it in the right way."

If a city which has received the benefits of a contract, not *ultra vires,* is estopped from interposing a defense based upon the manner in which the contract was made, individual taxpayers can not, by injunction, restrain the city from paying for or restoring the benefits. Appellants, citizens and taxpayers of the city, stood by and saw the erection of this public building. They knew the cost of its construction would have to be paid out of the funds of the city. True, they have made affidavits to the effect that they had no actual knowledge of any of the resolutions or steps taken by the city council relative to the construction of the building and the appropriation of money for it until after it was erected; but the resolutions and proceedings were published in two local papers and a record of them was kept in the office of the city clerk, open to their inspection had they desired to see it. Had they exercised but a small fraction of the concern to inform themselves as to what steps the council was taking in the direction of contracting for a city building that they have since exercised in an effort to defeat payment to a man public-spirited enough to advance money for the completion of the building, they might have restrained the council from erecting it until after making a regular appropriation therefor. This is a suit in equity. In a court of equity the doctrine of estoppel finds its widest field, and when we take into consideration all the facts and circumstances of this case,

the honest expenditure of the money, the benefits from it received by the city, and the attitude of these appellants, there is, to our minds, presented an appropriate case for an application of the doctrine.    Decree affirmed.

Mr. Justice BURROUGHS dissents.