(No. 2038—

GREEN & SONS COMPANY, A CORPORATION, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 29, 1936.*
*Rehearing denied May 12, 1937.*

MICHAEL L. IGOE, A. W. DILLING AND CASSIDY & KNOBLOCH, for claimant.

OTTO KERNER, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

*Per Curiam:*

Claimant filed its complaint herein on December 31st, 1932 and seeks to recover the sum of $75,000.00 as the reasonable value of certain services rendered during the period from November 1st, 1927 to September 1st, 1928, as superintendent of construction on contracts Nos. 5 and 6 of the Illinois Waterway, otherwise known as the retaining wall, lock and dam for the Brandon Road Pool.

Claimant had previously filed its claim herein, to wit, on July 12th, 1928 (Case No. 1339 reported 6 C. C. R. 373) seeking to recover for the services involved in the present claim, but based upon a contract in writing made and entered into by and between said claimant and the respondent, through its Department of Purchases and Construction, which said contract was approved and accepted by said respondent on October 27th, 1927. In its original claim filed on July 12th, 1928 as aforesaid, claimant sought to recover the sum of $50,692.49 for services rendered during the months of November and December, 1927 and from January to July, 1928. Thereafter, pursuant to leave of court, claimant increased the amount of its original claim from $50,692.49 to $78,095.90, the additional sum of $27,403.41 being for similar services claimed to have been rendered during the months of July and August, 1928.

Previous to November, 1927 claimants had entered into a contract with the respondent for the construction of a portion of the Illinois Waterway. About November 1st, 1927 the Department itself took over the construction of the work on such Waterway, pursuant to the provisions of the Illinois Waterway Act hereinafter referred to.

The provisions of the Illinois Waterway Act particularly involved in the claim now under consideration (as well as in the previous claim) are sections 12 and 13 of the Illinois Waterway Act — State Bar Association Revised Statutes 1935—Chapter 19, Paragraphs 102 and 103, which are as follows, to-wit:

"Sec. 12. In the construction of such waterway, its appurtenances and appliances, the Department of Public Works and Buildings may, in its judgment and discretion, proceed in either of the following ways:

(1) It may let the same or any part or portion thereof to the lowest responsible bidder; or

(2) It may do the same or any part or portion thereof, by the direct employment of services, labor, materials and equipment, and may procure and employ for such purpose the necessary superintendents, agents, office force, laborers, workmen, implements, tools, machinery and all other employees, equipment and services necessary or incidental to such construction.

Sec. 13. Before any contract entailing the expenditure of five thousand dollars or more is entered into, public notice shall be given of the time and place at which proposals shall be received for entering into contracts, which notices shall be previously published for at least once a week for four weeks in two daily newspapers printed in the city of Chicago, in two engineering and contracting journals of general circulation in the United States, and in such other publication as may be deemed proper."

When the work was taken over by the Department of Purchases and Construction as aforesaid, such Department entered into the aforementioned contract of October 27th, 1927 with the claimant, for the superintendence of the work and the use of its machinery and its equipment in the doing of such work. Such contract provided that the claimant should receive ten per cent (10%) of the ''Fee Cost'' as therein defined, as compensation for its services as superintendent, and was made without any compliance with the aforementioned provisions of the Illinois Waterway Act with reference to advertising for competitive bids where the amount of the contract is in excess of $5,000.00.

Thereafter a question as to the validity of the contract was raised by the Auditor of Public Accounts, and the matter

was submitted to Oscar Carlstrom, then Attorney General, for an opinion thereon. He advised (Attorney General's Report 1929, p. 227) that the contract was invalid.

Thereafter a public letting was held, and claimant was awarded the contract for the completion of the work on substantially the same terms as the previous contract which had been declared invalid.

The claim originally filed by the claimant on July 12th, 1928 as aforesaid, was for the recovery of the amount claimed to be due it under its aforementioned contract of October 27th, 1927.

The then Attorney General contested the allowance of the claim upon the hearing thereof, this court held—6 C. C. R. 373—that the contract in question was in violation of the aforementioned sections of the Waterway Act, and therefore invalid, and refused to allow an award. Petition for rehearing was filed and denied.

Thereafter, to-wit, on December 31st, 1932, claimant filed its aforementioned complaint in this cause to recover the reasonable value of the services rendered by it pursuant to the aforementioned contract of October 27th, 1927.

The present complaint, however, is not based upon the contract, but is based upon the *quantum meruit;* for the recovery of the reasonable value of the services rendered.

The Attorney General makes the following contentions in this case, to-wit:

1. That the former decision of this court, reported in 6 C. C. R. 373, in which the contract of October 27th, 1927 was held invalid, is *res adjudicata* and constitutes an absolute bar to the present claim.

2. That even though the former decision of this court is not a bar to the present claim, claimant is not entitled to recover on the *quantum meruit* for the services rendered.

3. That in any event, this court has no jurisdiction in this case.

We will consider the questions raised by the Attorney General in the order above stated.

## I.

The question as to when the doctrine of res adjudicata may be applied has been considered by the courts of this State

in many, many cases. The general principles of law with reference thereto seem to be well established, but the application of such principles is not always free from difficulty.

We will refer only to a few of the more recent decisions, as we feel that such decisions set forth the principles of law which must govern us in the determination of the question here involved.

In the case of *Hoffman* vs. *Hoffman*, 330 Ill. 413, the facts were entirely different from the case at bar, but the court had occasion to consider the general principles of law which must govern in cases where a previous adjudication is relied upon as an absolute bar to a subsequent claim. In that case the court, on pages 417 and 418, said:

"Where a former adjudication is relied upon as an absolute bar, there must be, as between the actions, identity of parties, of subject matter and of cause of action. When the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered. Where some controlling fact or question material to the determination of both causes has been adjudicated in the former suit by a court of competent jurisdiction and the same fact or question is again at issue between the same parties, its adjudication in the first cause will, if properly presented, be conclusive of the same question in the later suit, irrespective of the question whether the cause of action is the same in both suits or not. This is sometimes denominated as an estoppel by verdict. (*Public Utilities Com.* vs. *Smith*, 298 Ill. 151.) The rule in respect to the conclusiveness of the verdict and former trial between the same parties, when the judgment is used in pleading as a technical estoppel or is relied on by way of evidence as conclusive *per se*, is, that it must appear by the record of the prior suit that the particular controversy sought to be construed was necessarily tried and determined—that is, if the record of the former trial shows that the verdict could not have been rendered without deciding the particular matter it will be considered as having settled that matter as to all further actions between the parties; and further, in cases where the record does not show that the matter was necessarily and directly found by the jury, evidence aliunde consistent with the record may be received to prove the fact. But even where it appears from the intrinsic evidence that the matter was properly within the issue controverted in the present suit, if it be not shown that the verdict and judgment necessarily involved its consideration and determination it will not be concluded. (*Sawyer* vs. *Nelson*, 160 Ill. 629; *Rhoades* vs. *City of Metropolis*, 144 id. 580; *Geary* vs. *Bangs*, 138 id. 77).

"To operate as an estoppel by verdict it is abolutely necessary that there shall have been a finding of a specific fact in the former judgment or record that is material and controlling in that case and also material

and controlling in the pending case. It must also conclusively appear that the matter of fact was so in issue that it was necessarily determined by the court rendering the judgment interposed as a bar by reason of such estoppel. If there is any uncertainty on the point that more than one distinct issue of fact is presented to the court the estoppel will not be applied, for the reason that the court may have decided upon one of the other issues of fact."

In the case of *The People* vs. *Hart*, 332 Ill. 467, the court again had occasion to consider this question and quoted with approval the foregoing extract from the opinion in the case of *Hoffman* vs. *Hoffman*.

The law as laid down in the two cases just referred to has been followed and applied in numerous cases since that time and must be taken as well settled.

> *The People* vs. *C. & E. I. Ry. Co.*, 336 Ill. 506.
> *Healea* vs. *Verne*, 343 Ill. 325.
> *Crowder Seed Co.* vs. *Ind. Com.*, 347 Ill. 86.
> *Harding Co.* vs. *Harding*, 352 Ill. 417.
> *Coon* vs. *McGrath*, 273 Ill. App. 300.

The question involved in the original claim was as to the validity of the contract of October 27th, 1927, and the court there held that the contract was invalid. So far as the question of the validity of the contract is concerned, the previous decision of this court is *res adjudicata,* and is an absolute bar to any further proceedings on such contract.

In the present claim, however, claimant does not base its right to recover upon the contract in question, but seeks to recover on the *quantum meruit,* independent of the contract. The contention of the claimant in this case is simply this: Conceding that the contract in question is invalid, nevertheless the respondent has received the benefit of the services rendered, and we are therefore entitled to recover the reasonable value of such services.

The question as to the right of the claimant to recover for the services rendered on the *quantum meruit* was not raised, considered or decided upon the original hearing. The only question there raised or considered was the question as to the validity of the contract. No question having been raised or considered by the court regarding the right of the claimant to recover on the *quantum meruit,* it cannot now be contended that plaintiff is barred from asserting such claim by the previous decision of this court.

## II.

Is the claimant entitled to recover on the *quantum meruit*, for the reasonable value of services rendered pursuant to a contract which has heretofore been declared to be in violation of Sections 12 and 13 of the Illinois Waterway Act and therefore invalid?

The question has been very ably and thoroughly presented by counsel for claimant who have cited a large number of decisions in support of their contention, all but two of which, however, are decisions of courts of other jurisdictions.

Much confusion has arisen in decided cases on account of the failure to distinguish between two general classes of cases, to wit: 1) Those involving contracts which although irregular, are within the authority of the political subdivision to make; and 2) Those involving contracts which are either in excess of certain limited powers of such political subdivision, or are against public policy, or are in violation of mandatory provisions of law.

In the consideration of this case, two outstanding facts must constantly be kept in mind, to wit:

1. The authority of the Department to construct the Illinois Waterway is limited by Section 12 of the Waterway Act to two methods of procedure, to wit, either by contract to the lowest responsible bidder, or by the direct employment of services, labor, machinery, etc.

2. Section 13 of the Waterway Act requires that before *any contract* involving the expenditure of $5,000.00 or more is entered into, public notice of the proposed letting shall be advertised as set forth in the Act.

The legal effect of a contract made in violation of mandatory provisions of law, is set forth in an annotation appearing in 84 A. L. R., page 954, as follows:

"By the weight of authority, where by statute, charter, or constitutional provision, the power of a municipality, or other political subdivision, to make a contract, is limited, particularly where it is limited to a certain mode or manner of contracting, and any other manner of entering into a contract, and any other manner of entering into a contract or obligation is expressly or impliedly forbidden, no implied liability arises against a municipality for benefits received under a contract entered into in violation of those mandatory provisions, for no liability can result as a matter of implication where the express provisions of the statute or Constitution negative its existence.

The legal effect of a requirement that public notice of the letting be given, and that the contract be let to the lowest bidder is set forth in 19 R. C. L. p. 1068, Section 356, as follows:

"A statutory provision that all contracts of a municipal corporation above a certain amount shall be advertised in a designated manner and awarded to the lowest bidder is mandatory, and a contract of the designated amount cannot lawfully be made by a municipal corporation in any other way. If the municipal authorities disregard the statute and fail to publish the advertisement as required by law, or award the contract to other than the lowest bidder, a taxpayer of the municipality may have their action enjoined, and the contract although duly executed and signed, cannot be enforced by the other party thereto. Nor can recovery be had on a quantum meruit."

The question under consideration has arisen in practically every State in the Union, and the decisions of the different States, and in many cases the decisions of the different courts of the same State are not entirely in harmony. The authorities on the question are reviewed in an exhaustive annotation to the case of *Johnson County Savings Bank, et al.* vs. *City of Creston,* (212 Iowa 929) reported in 84 A. L. R. 926, in which case the facts were quite similar to the present case.

In that case suit was commenced by a paving contractor and its assignee against the City of Creston to recover the contract price for repairing certain pavements. Code provisions required that all contracts for street improvements be let to the lowest bidder after publication as set forth in the Code. No publication was made and it was contended that the contract was illegal. Plaintiffs then amended by adding another count in which they sought to recover the equivalent of the contract price as the reasonable value of the labor and material furnished. In that case the court said:

"The statute is peremptory that, "All contracts for the construction or repair of street improvements and for sewers shall be let in the name of the city to the lowest bidder by sealed proposals upon giving" prescribed notice. The statute is a prohibition upon letting such contracts in any other mode. * * * The city undertook to have the repairs in question made by contract. Having undertaken to have them made by contract, it was required to let the contract on competitive bidding. * * * It is a general principle that a municipal contract entered into in violation of a mandatory statute, or a contract in opposition to public policy, is not merely voidable but void * * * and that no contract for services rendered or goods furnished pursuant thereto can be implied, nor may the acceptance of benefits thereunder be made the basis of a liability by estoppel.

\* \* \* A municipal contract let without competitive bidding, when the statute requires competitive bidding, is void, and no recovery may be had either upon the purported express contract or upon an implied contract to pay the reasonable value of the services or material furnished thereunder. \* \* \* Manifestly the making of a contract may not be implied in a case in which an express contract is forbidden. \* \* \*

"To sustain the plaintiff's contention would be to permit one to obtain from a municipality an illegal contract for doing work impossible of return and by performing it enable him to recover the reasonable value of the services and materials furnished—to nullify the law by evasion and indirection and to recover the value of the work done under a contract which the law prohibits."

The aforementioned annotation reviews cases from many States, some of which are cited by counsel for claimant. The decisions of our Supreme Court are in accordance with the weight of authority as set forth in such annotation, and inasmuch as our courts have passed upon the question, it will not be necessary to rely upon the decisions of the courts of other States. Some of the early cases in this State seem to support the contention of the claimant, but some of such cases have been expressly repudiated by the Supreme Court in the case of *DeKam* vs. *City of Streator*, hereinafter referred to; others have been impliedly overruled by such decisions; and still others, upon careful analysis are distinguishable upon the facts from the later cases. In any event, if there is now any conflict between the earlier and the later decisions of our Supreme Court, the later decisions are controlling and must be taken to be the law of this State.

In the case of *Hope* vs. *City of Alton*, 214 Ill. 102, the city had adopted an ordinance creating a legal department, which provided for a corporation counsel, and also provided that the city should not be liable in any case for the services of any attorney except the corporation counsel. Thereafter the counsel passed a resolution authorizing the employment of a certain attorney other than the corporation counsel, in connection with a number of damage suits then pending. Such attorney rendered legal services in such cases and afterwards commenced suit against the city to recover the value thereof. In that case the court held that the ordinance had the effect of a law within the corporate limits, that the contract made by the City Council was prohibited by such law and therefore void, and that the city was not estopped from denying

its liability thereon by reason of the fact that it had received the benefit of the services rendered. In the course of its opinion the court said:

"Counsel say, however, that plaintiff might recover on the ground that when a city has power to make a contract in one way and exercises the power in a different mode, it will be estopped from setting up the illegal exercise of power when called upon to pay for what it has received under the contract. In other words, the proposition is that when a city gets what it had authority to get in some way, it should pay for what it gets, whether it exercised the power in the prescribed way or not. The obvious answer is, that this contract was prohibited by a valid ordinance, and that the City Council had no right to make it in some other way or by some other method. The City Council had no authority, by any method or process, to agree that the city should pay for legal services to be rendered by the plaintiff, who was neither city attorney nor corporation counsel. The ordinance prohibiting such a contract was in full force and effect, and its operation as a law was in no manner affected by the resolutions. *People* vs. *Latham*, 203 Ill.9.

"It is further contended that the city is estopped to deny its liability by the acts of the city council and its officers. The doctrine of ultra vires is applied with greater strictness to municipal bodies than to private corporations. (1 Smith on Mun. Corp. Sec. 661.) Persons dealing with a municipal corporation are chargeable with notice of its powers to contract, and plaintiff was chargeable with notice of the ordinance in question. A municipal corporation is not estopped from denying the validity of a contract when there was no authority for making it. To hold otherwise would be to expose the taxpayer to all the evils which statutes or ordinances passed for his protection were designed to prevent. Cases where municipal corporations have been held to be estopped when acting in a private capacity in the performance of duties enjoined upon them are not in point in this case, both because the city had performed the duty by providing a law department, with officers to discharge its duties, and also because the contract was directly prohibited by the ordinance."

In the case of *May* vs. *City of Chicago*, 222 Ill. 595, one of the clerks in the Collector's Office was asked to do extra work after his regular office hours under a promise that he would be paid for the same. The services were rendered and suit was commenced to recover the value thereof. No appropriation had been made for the payment of extra wages and the court held that no valid contract could be made in the absence of a previous appropriation, and that in the absence of such appropriation it was impossible by any act of the city officials to create a liability against the city for such services. In arriving at its conclusion the court, on page 599, said:

"It is contended that the city was bound by the city collector's promise to pay for the extra work. Section 91 of the City and Village Act (Hurd's Stat. 1905, p. 308,) provides that no contract shall be made by the city council or any committee or member, and no expense incurred by any of the officers or departments of the corporation, unless an appropriation shall have been previously made. No appropriation having been made for this extra work of the plaintiff, it is impossible by any act of the city officials to create a liability against the city for the work. * * * A person dealing with a municipal corporation is charged with the knowledge of the limitations of the power of that corporation for any contract attempts to be entered into by any of its officials."

The same question was raised and the same conclusion reached in the case of *Gathemann* vs. *City of Chicago*, 263 Ill. 292.

The question here involved was very thoroughly considered by our Supreme Court in the case of *DeKam* vs. *City of Streator*, 316 Ill. 123. The complainants in that case filed their bill against the City of Streator to restrain such city and its officers from paying further money to one G. L. Clausen, pursuant to the terms of certain contracts theretofore made between the city and Clausen whereby he undertook to design a sewer system for the city. No appropriation had previously been made by the City Council for the payment of such work.

Upon completion of the work Clausen presented to the Board of Local Improvements his bill for his services amounting to $34,263.00, of which he had previously been paid $3,000.00. Thereafter the Council ordered payment of the bill. In that case the court held that the contract was void because it was prohibited by law, and in consideration of the questions there involved, said:

"A contract expressly prohibited by a valid statute is void. This proposition has no exception, for the law cannot at the same time prohibit a contract and enforce it. The prohibition of the Legislature cannot be disregarded by the courts. * * *

"In many other cases contracts not prohibited by the express words of a statute but in violation of its terms have been held void, and it is a well established rule that where, from a consideration of all the provisions of the statute, the legislative intention clearly appears to declare an act unlawful no contract for the performance of that act can be enforced, and the rule applies to a contract to do an act contrary to the public policy of the State. * * *

"In the absence of an appropriation there was no liability, and if it should be held that there was a liability, the provision which the statute intended for the protection of taxpayers would be nugatory and of no avail."

In the consideration of such case the Supreme Court discussed the case of *Village of Harvey* vs. *Wilson*, 79 Ill. App. 544, and the case of *Westbrook* vs. *Middlecoff*, 99 Ill. App. 327, in which the Appellate Court had taken a contrary view, and held that such cases had been erroneously decided. In speaking of the decision of the Appellate Court in the Middlecoff case, the Supreme Court in the DeKam case said:

"The opinion is based on the theory that the statute authorized the city to contract for the erection of the building, and, as we have seen, the statute expressly prohibited the city from making the contract. Section 2 of Article 7 of the Cities and Villages Act is not a regulation of the mode in which the city may exercise its power to contract, but is a denial of the power and a prohibition of making any contract unless an appropriation shall have been previously made for the purpose. There was no attempt on the part of the municipal officers to override the regulations for the exercise of a power, but there was an attempt to override the law which prohibits the exercise of the power. The case was erroneously decided, for this error goes to the root of the whole matter."

In the DeKam case, in speaking of the question of estoppel in connection with the question there involved, the court said:

"The city cannot be estopped to dispute the validity of a contract which it had no power to make, for the reason that it has received the consideration. "Everyone is presumed to know the extent of the powers of a municipal corporation, and it cannot be estopped to aver its incapacity, which would amount to conferring power to do unauthorized acts simply because it has done them and received the consideration stipulated for. *Stevens* vs. *St. Mary's Training School*, 144 Ill. 336; *Hope* vs. *City of Alton*, 214 id. 102; *May* vs. *City of Chicago*, 222 id. 595; *People* vs. *Parker*, 231 id. 478." *Eastern Illinois Normal School* vs. *City of Charleston*, 271 Ill. 602."

Upon consideration of the entire case, the court held that "there was no power in the council to do the particular thing because it was not included in the appropriation ordinance, and the power was therefore expressly denied them by statute."

As we view the present case in the light of the authorities cited, Section 12 of the Waterway Act constitutes an express restriction and limitation on the power of the Department to act and also constitutes an implied prohibition of the right or authority of the Department to act in any way other than that authorized by such section. Section 13 is an express limitation on the right of the Department to enter into a contract without first giving notice of the proposed letting. Both of the aforementioned statutory provisions are for the benefit

of the public and must be considered mandatory. Consequently, any contract made in violation thereof is void, and no recovery may be had thereunder, or upon an implied contract to pay for the reasonable value of the services rendered. As stated by the Supreme Court of Iowa in the Johnson County Saving Bank case, the making of a contract may not be implied in a case in which an express contract is forbidden.

An award for the claimant in this case would amount to a nullification of the aforementioned Sections 12 and 13; and would enable the plaintiff to accomplish by evasion and indirection what it was unable to accomplish directly.

We cannot consent to such an interpretation of the law. Under the record and the decisions of our Supreme Court, the claimant is not entitled to recover.

In the light of the conclusion at which we have arrived on this question, it becomes unnecessary to consider the further point urged by the Attorney General to the effect that the court has no jurisdiction of this claim.

Award will be denied and the case dismissed.

### Opinion on Rehearing.

*Per Curiam:*

Claimant filed a petition for rehearing herein, based upon the following grounds, to wit:

1. The court misapprehended the state of the record as respects the pleadings.

2. The court overlooked the fact that Paragraph 2 of Section 12 of the Waterway Act authorizes the Department of Public Works and Buildings to construct waterways by the direct employment of services, labor, materials, and equipment; and in the event the Department proceeds by direct employment, the provisions of Section 13 with reference to the publishing of notice for proposals prior to the letting of the contract, has no application.

We will consider such points in the order above set forth.

### I.

The respondent filed no pleadings and under Rule 15 of this court, a general traverse or denial of the facts set forth in the complaint was considered filed.

Counsel for claimant seems to be under the impression that there was no evidence before the court, and that the case was disposed of on the complaint and the general traverse. On page 1 of the petition for rehearing, counsel state: ''This court has dismissed the complaint herein without any pleadings having been filed by the respondent and without any evidence having been offered by either party.''

Apparently counsel for claimant are not familiar with the record. This is readily understandable, as the present counsel for the claimant did not appear in the cause until February 12th, 1936;—numerous other counsel having represented the claimants prior to that date.

A reference to the record shows that on December 31st, 1932 a stipulation of facts was filed herein, the first paragraph of which reads as follows:

"It is hereby stipulated by and between *Green & Sons Company*, a corporation, claimant, by *John P. Loughnane*, its attorney, and the *State of Illinois*, respondent by *Oscar E. Carlstrom*, Attorney General, that the following is a true and correct statement of facts on which said claim is based."

The record also shows that on April 28th, 1933 a further stipulation was filed herein, the first paragraph of which reads as follows:

"IT IS HEREBY STIPULATED by and between the State of Illinois by Otto Kerner, Attorney General, and Green & Sons Company, claimant, by *John P. Loughnane*, its Attorney, that the following records and exhibits shall be admitted in evidence in said cause as bearing on issues involved."

The last mentioned stipulation, with the exhibits attached thereto, comprises 29 typewritten pages. Obviously, there is no merit to claimant's first contention.

## II.

A reading of the opinion will disclose that the court quoted and considered both Sections 12 and 13 of the Illinois Waterway Act.

Attention is called to the following, which appears on pages 6 and 7 of the opinion of the court, to wit:

"In the consideration of this case, two outstanding facts must constantly be kept in mind, to wit:

"1. The authority of the Department to construct the Illinois Waterway is limited by Section 12 of the Waterway Act to two methods of procedure, to wit, either by contract to the lowest responsible bidder, or by the direct employment of services, labor, machinery, etc.

"2.  Section 13 of the Waterway Act requires that before *any contract* involving the expenditure of $5,000.00 or more is entered into, public notice of the proposed letting shall be advertised as set forth in the Act."

Sections 12 and 13 were enacted for the benefit of the public.  If claimant's contention were upheld it would not be necessary in any case to advertise for bids, or let any contract to the lowest responsible bidder.  The Department could take the position that it would do the work by direct employment, and could then arrange for the doing of such work by a favored contractor on a "cost plus" or "fee cost" basis; and thereby accomplish just what said Sections 12 and 13 were intended to prevent.

We can see no merit to either point raised by the claimant and petition for rehearing will therefore be denied.