(No. 5217—

MARY FRANCES THOMAS, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 12, 1968.*

JOSEPH M. TAUSSIG, Attorney for Claimant.

WILLIAM G. CLARK, Attorney General; GERALD S. GROBMAN and MORTON L. ZASLAVSKY, Assistant Attorneys General, for Respondent.

DOVE, J.

Mary Frances Thomas, claimant, is seeking judgment against the State of Illinois in the amount of $8,470.00 for services allegedly performed by her as a clerk-typist, while she was a patient at the Chicago State Hospital.

The Departmental Report, which was filed in this case, gives a short history of claimant as follows:

"According to our records, the patient was first admitted to the Chicago State Hospital on October 31, 1953. She was committed as mentally ill on October 29, 1953 to the Psychopathic Hospital of Cook County. Her diagnosis upon admission at the Chicago State Hospital was Schizophrenic Reaction, Chronic Undifferentiated Type with Paranoid Tendencies.

"On August 20, 1956, patient worked in the Public Health Officer's Office as an Industrial Assignment.

"On May 23, 1958, patient was transferred to the Tinley Park State Hospital. Records from the Tinley Park State Hospital state that on April 21, 1959 patient worked in the office of the Volunteer Service as a clerk-typist, an Industrial Assignment, part of patient's treatment.

"On April 22, 1959, patient was transferred back to the Chicago State Hospital. Records dated January 23, 1962 stated that Miss Thomas has worked in 'the Chaplain's office for about six months.' The kind of work performed included 'typing, filing, taking messages, and miscellaneous work around the office.' On the same date John H. Reynolds, Chaplain Coordinator of Protestant Services, wrote to Miss Ruth Espe, Industrial Therapist, recommending that Miss Thomas be hired as an 'Institutional Helper' in a secretarial capacity for the Chaplain's office. This recommendation was considered and discussed. However, it is not customary for Chicago State Hospital to employ former patients, but rather encourage, help, and support them toward finding a place in the community once they have gained enough stability within the hospital setting. This was the case with Miss Thomas, so exploratory steps were initiated toward this aim.

"In March, 1963, Miss Thomas was referred to the Rehabilitation Department. 'It was felt that she could benefit from an inter-

mediate work situation, i.e., as a period for increasing her self-confidence, and as a test of her stability to work outside.' Thus she was referred to Civil Defense for a period of approximately four months. In September, 1963, an evaluation of Miss Thomas' performance at Civil Defense was made. It was stated that the patient 'did quite well working in clerical skills. She terminated at Civil Defense on this date, a discharge planning was pending.' On September 16, 1963, Miss Thomas was granted a Conditional Discharge to Self, as Improved. On January 15, 1964, Miss Thomas' Conditional Discharge was changed to Absolute Discharge as Recovered."

The issues in this case are framed by three paragraphs in claimant's complaint, which are denied by respondent:

"Between to-wit the first day of August, 1961, and to-wit the first day of June, 1963, inclusive, and while claimant was a patient at the Chicago State Hospital, the claimant at the instance and request of the Department of Mental Health of the State of Illinois performed certain services.

"The value of the services performed for and at the request of the Department of Mental Health of the State of Illinois is $385.00 per month, or a total of $8,470.00, as detailed in the attached Bill of Particulars.

"Claimant is justly entitled to the amount herein claimed from the State of Illinois or the appropriate State Agency after allowing all just credits."

Dr. Albert Kunschner, the physician in claimant's ward, testified that he went on various occasions to the personnel office of the hospital to see about putting Miss Thomas on the payroll. On numerous occasions he talked to Mr. Hurd, the Director of Personnel, and recommended employment as a part of her treatment, but that Mr. Hurd advised him that there were no funds available for such employment. Chaplain Paul N. Munson at the hospital also testified that claimant was very depressed and despondent because she was not being paid for her work; that he had discussed the matter of claimant's employment with Dr. Kunschner and Mr. Hurd, and that Mr. Hurd advised him that claimant

would have to receive an Unconditional Discharge before she could be put on the payroll.

Claimant contends that in Illinois there are statutory provisions, which indicate a legislative intent and history that the Director of the Department of Mental Health had the power to employ claimant or other persons in a similar status, and thereby become liable for payment for such services rendered. ''Each department is empowered to obtain necessary employees, and, if the rate of compensation is not otherwise fixed by law, to fix their compensation subject prior to July 1, 1956 to Civil Service Laws in force at such time, and on or after July 1, 1956 subject to the provisions of the 'Personnel Code', enacted by the 69th General Assembly.'' (Chap. 127, Sec. 20, Ill. Rev. Stats.)

The record is clear that, in spite of repeated efforts made by the doctors and the chaplain on claimant's behalf, she was not put on the payroll either as a patronage or a merit system employee. The record further discloses that claimant worked as a clerk-typist in the chaplain's office during the period from August 1, 1961 through June 1, 1963.

In the case of *Maibauer* vs. *State of Illinois*, 4 C.C.R. 115, the Court, in denying a former patient of a State institution any compensation for services rendered during the period of confinement, said:

"We do not think there is any force to the argument that claimant is entitled to recover for services he claims to have rendered while an inmate of the State Hospital. There is no authority in law for payment for such employment."

And in the case of *Kough* vs. *Hoehler*, 413 Ill. 409, the court stated:

"The Mental Health Code makes no provisions for allowing any

credit for the labor of patients against the charges assessed. It has been generally held that, where a statute requires that the patient, his estate or his relatives pay the cost of his maintenance in the State Hospital, and there is no express statutory provision for deducting the value of any labor performed by the patient, no deduction can be allowed."

The claimant further contends that she may be entitled to recover in quantum meruit, for the reasonable value of services rendered by her to the chaplain. This contention was considered in the case of *Dutton* vs. *State of Illinois,* 16 C.C.R. 64, and the Court there held that, where claimant furnished services and labor for an agency of the State, and admitted he was not an employee of the State, the Court recognizes that the law will raise an implied contract, that the recipient of labor or materials will pay the fair reasonable value of the same, but where the defendant is the sovereign State, this doctrine does not apply.

We are of the opinion that claimant's services should be considered as incidental to her commitment to the hospital, and not as a basis for compensation.

It is, therefore, the order of the Court that claimant's claim be denied.