(No. 98-CC-0111—

ARTHUR WULF, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed May 14, 1999.*

ARTHUR WULF, *pro se.*

JIM RYAN, Attorney General (MICHAEL F. ROCKS, Assistant Attorney General, of counsel), for Respondent.

### OPINION

EPSTEIN, J.

This claim for attorney's fees against the Respondent's Department of Revenue ("IDR"), based on the common fund doctrine, is before us on the Respondent's motion to dismiss for want of jurisdiction. This motion was briefed and orally argued to the full Court.

Because this claim involves the conduct of a Circuit Court probate proceeding and fee awards entered therein, this Court directed the parties to supplement the record on the pending motion with additional documentation of those proceedings (order of November 5, 1998), which both parties did. Following oral argument, Claimant requested leave to submit additional authority, as to application of the common fund doctrine to a probate situation analogous to this case, (see, *Estate of Pfoertner* (5th Dist. 1998), 298 Ill. App. 3d 1134, 700 N.E.2d 438), which we allow.

### Nature of the Claim

Claimant brings this fee claim as the attorney for the estate of Timothy Sneed (the "Estate"), which is in probate in the Circuit Court of Cook County (No. 93 P 10348). The Respondent, through IDR, is a Claimant against the estate and thus, a beneficiary of its funds.

This fee claim is based on the common fund doctrine, an application of the equitable doctrine of unjust enrichment. This doctrine supports an award of legal fees from a fund to an attorney whose legal work resulted in

the creation of the fund and in the ultimate financial benefit to its distributees; the driving equitable principle is that in the absence of *quantum meruit* compensation for the attorney, the fund beneficiaries would reap a windfall from the attorney's uncompensated work, *i.e.*, an unjust enrichment. *Scholtens v. Schneider* (1996), 173 Ill. 2d 375, 671 N.E.2d 657, 219 Ill. Dec. 490; *Brundidge v. Glendale Federal Bank, F.S.B.* (1995), 168 Ill. 2d 235, 659 N.E.2d 909, 213 Ill. Dec. 563; *Estate of Pfoertner, supra.*

## The Facts as Alleged

According to the allegations of the complaint (which we must take as true for purposes of the pending motion) and the additional facts asserted in Claimant's brief (which we generally assume, *arguendo*, for purposes of this jurisdictional motion), and from the parties' supplemental submissions of documents from the Circuit Court probate proceedings, it appears that the Claimant was engaged to be counsel of an insolvent estate (of which he was also the administrator). The estate had essentially no available assets, huge debts—particularly federal and Illinois taxes—and substantial receivables, which were mainly uncollected medical fees of the decedent, who had been a freelance radiologist.

Claimant alleges that as counsel for the estate he did the following that warrants an equitable fee award:

(1) collected $130,000 of receivables, thereby creating a fund from which the Respondent benefitted;

(2) negotiated a favorable $42,000 settlement with the I.R.S. of its income tax and estate tax claims which exceeded $250,000 and thus exceeded the assets of the estate (and which were superior, under the priorities of the Illinois Probate Code, to all other claims except administrative expenses),

leaving a cash balance in the estate that allowed payment of a $38,000 widow's award and funds for Illinois tax payments that otherwise would all have gone to the I.R.S.; and

(3) is responsible for the estate's payment to the Respondent of $30,000 for estate taxes and $1,500 for Illinois income taxes.

(See complaint, pars. 3-13; Claimant's memorandum of law in support of claim; Claimant's documents to supplement record, pars. 4-8.)

There is approximately $10,000 (or $12,000) now remaining in the Estate.[1] According to the Probate Court pleadings, it appears that the IDR is still seeking the remaining $10,000-$12,000 of estate funds, apparently as back income tax claims.

Claimant requests $6,000 as compensation from IDR (apparently from the remaining estate funds that otherwise would go to IDR under its tax claim) under the common fund doctrine for his efforts in creating the estate fund and settling the I.R.S. claims so that funds were available to pay the IDR its estate tax claim (and, presumably, any further payments that IDR may receive from the estate's remaining funds). Claimant acknowledges that he was awarded $14,017 of attorney's fees by the Probate Court in 1995, and informs us that the probate judge has refused to allow additional fees. (complaint, pars. 3-13.)

Respondent's supplemental submission of Probate Court documents reflects that the Probate Court previously awarded Claimant $17,391 of attorney's fees from the estate (order of July 15, 1994, per Budzinski, J.); it is

---

[1] The inconsistencies in the numbers reported, in the various pleadings and probate documents, to items in the estate (*e.g.*, tax claims and total amounts awarded and paid on some claims) need not be resolved for purposes of the motion to dismiss.

not clear whether that amount was actually paid to Claimant from estate funds.

Despite the parties' submission of additional documentation of the probate proceedings, including the orders awarding attorney fees, it is unclear whether the Probate Court's awards of attorney's fees to Claimant encompass all of the work done for the estate, including work benefitting the IDR (as a Claimant), or whether the Probate Court excluded from its award fees that would be allocable to the Respondent's share of the probate "fund." Claimant hints but does not allege in his complaint that the Probate Court declined to award fees allocable to the IDR's share of the estate fund due to the Respondent's sovereign immunity and to jurisdictional deference to this Court. However, the Probate Court has stayed its final distribution rulings pending this Court's decision of this claim.

## The Jurisdictional Issue

Respondent's motion to dismiss attacks the subject matter jurisdiction of this Court over this claim, *i.e.*, our authority to adjudicate this particular cause of action. Respondent contends (1) that this Court lacks "equitable jurisdiction" to adjudicate a common fund unjust enrichment claim, or a *quantum meruit* claim, which are equitable causes of action; (2) that there is no contract with the Respondent that might support this Court's jurisdiction over State recoupment claims under section 8(e) of the Court of Claims Act (705 ILCS 505/8(e)) (the "Act"); and (3) the statutory exclusion of "civil litigation expenses" from this Court's jurisdiction in section 8(a) of the Act.

Claimant asserts that this Court has jurisdiction under section 8(a) ("claims founded upon any law of the State of Illinois") and section 8(e) ("claims for recoupment made by the State of Illinois against any claimant")

of the Act. Claimant's section 8(e) argument, however, urges a more general "contract" basis for jurisdiction than merely a "recoupment" basis, and thus relies on section 8(b) ("claims against the state founded upon any contract entered into with the State of Illinois").

### The Jurisdictional Analysis

It is axiomatic, and requires no citation of authority—which is endemic in the reports of this Court as well as those of the Illinois reviewing Courts—that for this Court to have subject matter jurisdiction over a claim, such jurisdiction must be granted to us by statute. This is a statutory Court, and has only those remedial powers and only that adjudicatory jurisdiction that is granted to us by the General Assembly.

Under current law, the only statutory delegation of authority to this Court is set forth in section 8 of the Court of Claims Act (705 ILCS 505/8), as far as we are aware. The jurisdictional analysis, accordingly, is straightforward: does the claim fall within the scope of any of the jurisdictional grants in section 8, *i.e.*, pars. 8(a) through par. 8(i).

For this analytical reason, we must initially reject, at least facially, the Respondent's argument that this Court lacks jurisdiction because the claim asserted is equitable and thus requires "equitable jurisdiction" which we lack. This is not the dispositive question.

When the issue is the subject matter of this Court *to adjudicate* a particular kind of claim for damages, as it is in this case, the notion of "equitable jurisdiction" is irrelevant. It is irrelevant because our jurisdictional statute (section 8 of the Act) does not speak in terms of "legal" or "equitable" claims or jurisdiction.[2] As with any statute, the

---

[2] When the other aspect of subject matter jurisdiction is raised—*i.e.*, the *power* of the Court to grant a particular remedy—the issue of "equitable" jurisdiction, in the sense of authority to grant equitable *remedies*, does come into play as this Court has recognized. *See, Garimella v. University of Illinois* (1997), 50 Ill. Ct. Cl. 350 (Court of Claims lacks jurisdiction to grant injunctive relief).

statutory grants of adjudicatory jurisdiction to this Court must be construed in accordance with their own language.

As argued in this case, the issue of whether this Court can entertain and adjudicate a "common fund" claim for attorney's fees, which as noted above is an equitable unjust enrichment claim, turns on whether unjust enrichment claims fall within the language of section 8(a), section 8(b) or section 8(e) of the Act. We hold that they do not.

Claimant's argument centering on this Court's "contract" jurisdiction under sections 8(b) and 8(e) of the Act requires little discussion. This Court has long held that our contract jurisdiction is limited to express contracts with the State and does not encompass implied in law contracts (*quasi*-contracts), such as *quantum meruit* claims.[3] An unjust enrichment claim, insofar as it may be considered to be a "contract" claim, in our view is just another form of *quasi*-contract that lies outside our contract jurisdiction under section 8(b) of the Act.

Our recoupment jurisdiction under section 8(e) is plainly inapplicable to this case. Indeed, Claimant has it exactly backwards, as section 8(e) recoupment is limited to *State* recoupment claims against Claimants and has no applicability to Claimants' claims against the State.

Finally, we come to the most interesting if abstruse argument advanced by this Claimant: the contention that

---

[3] This Court's opinions have articulated this point as a matter of our limited jurisdiction, and sometimes as a lack of "equitable jurisdiction." See, e.g., *Green and Sons Co. v. State* (1936), 9 Ill. Ct. Cl. 218; *Schutte v. State* (1957), 22 Ill. Ct. Cl. 592; *Thomas v. State* (1968), 26 Ill. Ct. Cl. 252; *Marts v. State* (1968), 26 Ill. Ct. Cl. 256; *Illinois Belli & Belli Co. v. State* (1975), 31 Ill. Ct. Cl. 129; *Sunley v. State* (1976), 31 Ill. Ct. Cl. 176; *De Stafano v. State* (1978), 32 Ill. Ct. Cl. 118; *Hofer v. State* (1978), 32 Ill. Ct. Cl. 745; *Armstrong v. State* (1978), 32 Ill. Ct. Cl. 166; *Kent v. State* (1978), 32 Ill. Ct. Cl. 471; *Central Office Equipment Co. v. State* (1979), 33 Ill. Ct. Cl. 90; *Klingberg Schools v. State* (1979), 33 Ill. Ct. Cl. 184; *Wilder Mobile Homes, Inc. v. State* (1980), 33 Ill. Ct. Cl. 227; *Brighton Building Maintenance Co. v. State* (1982), 36 Ill. Ct. Cl. 36; *Ward v. State* (1989), 35 Ill. Ct. Cl. 398; *Melvin v. State* (1989), 41 Ill. Ct. Cl. 88; *Burke & Smith Chartered v. State* (1991), 44 Ill. Ct. Cl. 213; *New Life Development Corp. v. State* (1962), 45 Ill. Ct. Cl. 65; *Keith J. Sennstrom v. State* (1993), 46 Ill. Ct. Cl. 304; *Glenstone Homeowners Ass'n v. State* (1996), 48 Ill. Ct. Cl. 388.

this common fund claim for attorney's fees can rest on this Court's section 8(a) jurisdiction because the fees arise in a probate proceeding that is governed by a "law of the State of Illinois"—the Probate Code.

We need go no further than to observe that the critical requisite of section 8(a) jurisdiction is that the "claim" itself must be "founded upon" an Illinois law. That most commonly occurs when the claim is based on a statutory cause of action—*i.e.*, one expressly created by statute or, arguably, by the Constitution—or an implied statutory cause of action, as when a claim is based on a statutory or constitutional duty that is held to give rise to liability (*e.g.*, on an implied private cause of action theory).

The attorney's fee claim in this case is based on equitable principles; that claim is not "founded upon" the Probate Code and does not arise under or by virtue of that statute. We have not been cited to any provision of the Probate Code that (1) grants this Court jurisdiction over a common fund attorney's fee claim against the State arising in a probate proceeding, or that (2) creates or gives rise to an unjust enrichment or *quantum meruit* claim for attorney's fees against any creditor of a probate estate. There is therefore, no jurisdictional basis under section 8(a) for this Court to adjudicate a common fund claim. Because we hold that this common fund claim is outside the scope of our section 8(a) jurisdiction, we need not address Respondent's argument as to the section 8(a) exclusion of "expenses in civil litigation."

Because of the Probate Court's deference to this Court on this claim, and the consequent disruption of the probate proceedings, and in light of our determination that this Court lacks jurisdiction to adjudicate this particular claim, we add some additional observations.

Our analysis of our jurisdiction over this common fund claim is *not* based on the assumption that this Court has or requires jurisdiction over the estate *fund*. We entertained this claim, and have considered our jurisdiction to decide it, as a claim against the State no different from any other claim that seeks damages to be paid by the State from duly appropriated funds.

Insofar as this "common fund" fee claim may be a claim against the particular estate funds, we believe that this Court lacks authority to order money paid from those funds; indeed, we find nothing in the Act or in the Probate Code that grants this Court any jurisdiction over the estate or its funds. (See, *Reynolds State Bank v. Office of the State Guardian* (1998), 51 Ill. Ct. Cl. 332.) Moreover, it is not at all clear that the State's "share" of this probate estate's funds, particularly the remaining funds that have not been awarded or paid to the State (and may never be), are now "State funds" that might come under the umbrella of sovereign immunity and under this Court's jurisdiction. We conclude that this Court lacks jurisdiction to award fees from the estate.

We recognize that our determination that this Court lacks jurisdiction over the particular claim and over the probate estate fund will not finally resolve this common fund fee issue in probate cases where the State is a Claimant against the probate estate. The Illinois reviewing Courts will ultimately have to determine whether the Probate Court may adjudicate a common fund fee claim against a "fund"—or against its holder or its beneficiaries—when one beneficiary of the fund is the State. Such a claim may or may not be a claim against the State that is barred in the Circuit Court by the Immunity Act. 745 ILCS 5/1 *et seq*.

That is an issue that this Court cannot and does not address. We hold only that, under our limited jurisdiction

under section 8 of the Court of Claims Act, this Court lacks jurisdiction over this common fund claim and over the probate estate's funds.

### Order

For the foregoing reasons, it is hereby ordered: This claim is dismissed for want of subject matter jurisdiction.