(No. 3669—)

PICKUS ENGINEERING & CONSTRUCTION COMPANY, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed September 14, 1943.*

DENT, WEICHELT & HAMPTON, for claimant.

GEORGE F. BARRETT, Attorney General; WILLIAM L. MORGAN, Assistant·Attorney General, for respondent.

CHIEF JUSTICE DAMRON delivered the opinion of the court:

The record discloses that the claimant, the Pickus Engineering and Construction Company, Inc., is an Illinois corporation with offices in Winnetka, Illinois. During the year 1937 and for a long time prior to May 28, 1937, and subsequent thereto claimant was engaged as a general building contractor, including the construction of highways and work incidental thereto.

On May 28, 1937, the respondent, through the Department of Public Works and Buildings, mailed copies of a notice to claimant and other contractors that a letting was to be had on June 11, 1937, for a highway improvement designated as State Bond Issue Route 118A, Federal Aid Project 229B, Section 108A, Livingston County, Illinois.

This notice, among other provisions and instructions contained the following:

"Sealed proposals for the improvement of the road described herein will be received by the Department of Public Works and Buildings at the office of the Division of Highways, Springfield, Illinois, until 10:00 o'clock A. M., June 11, 1937, and at that time publicly opened and read."

On June 10, 1937, in response to said notice and in conformity with section 3a of it, claimant submitted its proposal to do and perform the designated work as described in said notice, and attached to the proposal a bank cashier's check or bank draft in the sum of Fifty Four Hundred and Sixty Dollars ($5,460.00) as a proposal guaranty.

On the following day claimant sent the following telegram to the Department from Chicago, Illinois:

"Please change our bid Section Five G One Christian County to read fifteen thousand one sixty four cubic yards gravel or stone to Three Dollars Sixty Five cents per cubic yard and Section Ten Eight A Livingston County one hundred thirty six thousand five eighteen cubic yards excavation to thirty one cents leaving rest unit bid as is. PICKUS ENG. AND CONSTR. INC., JOSEPH PICKUS."

At 10:00 A. M., on June 11, 1937, the Department publicly opened, read and tabulated all proposals received. Claimant's proposal for work in Livingston County was found to be the lowest. On June 14, 1937, the Department wired the claimant as follows:

"Articles two point eleven A page seven of Standard Specifications prevent consideration of your telegram concerning Livingston County bid Stop Will consider bid as originally submitted or reject Stop Please advise immediately. Ernst Lieberman."

Sections 2.9 and 2.11(a) referred to in the foregoing telegram read as follows:

"2.9 WITHDRAWAL OF PROPOSALS. Permission will be given a bidder to withdraw a proposal if he makes his request in writing before the time for opening proposals. If a proposal is withdrawn, the bidder will not be permitted to submit another proposal for the same section at the same letting.

"2.11 DISQUALIFICATIONS OF BIDDERS. Any one or more of the following causes may be considered as sufficient for the disqualification of a bidder and the rejection of his proposal.

(a) More than one proposal for the same work from an individual, firm, or corporation under the same or different names."

The receipt of this telegram was acknowledged by claimant and on June 17 the claimant company sent the following telegram in response thereto:

"Ernest Lieberman—Highway Dept. Springfield, Illinois, Original figures were based on non-union labor as highway files show no union schedule upon investigation Friday morning Chicago found job was union therefore wired in corrected price Stop Please reject as per your telegram as we cannot accept original figures without heavy loss. PICKUS ENGINEERING & CONST. CO."

On June 21, 1937, in reply to the above telegram C. M. Hathaway, then Engineer of Construction for the Division, wrote claimant the following letter:

"I wish to advise you that the telegram which you sent on the morning of the letting, requesting that the unit prices be changed, had no bearing upon your bid as the Engineers of this Department are without authority in the specifications to change a contractor's bid after it is submitted. Your bid, therefore, must stand as a regular bid."

On July 24, 1937, this claimant signed the contract to do the work as per his original bid of June 10, posted bond and sent the Department the following letter:

"Gentlemen:

Herein, you will find Bond and Contract, signed.

In signing this contract, we reserve whatever rights to which we are entitled with reference to our wire changing the unit price from 27c to 31c per cubic yard."

Thereupon the claimant proceeded upon the work according to the standard specifications, completing said job on the 24th day of August, 1938, and receiving a formal acceptance thereof on December 28, 1938. On December 29 the Department issued final voucher in the sum of Seven Thousand Five Hundred Six Dollars and Ninety-six Cents ($7,506.96) to the claimant which was received by claimant, endorsed and cashed by it. On December 31, 1938, claimant sent the following letter to the Department:

". . . We are accepting the above payment with the understanding that we do not waive our regular rights on our claim for increased unit bid as shown by our telegram on June 11, 1937."

The above are the pertinent facts in chronological order upon which this claim is based. Claimant seeks an award of Five Thousand Four Hundred Sixty Dollars and Seventy-two Cents ($5,460.72), representing the difference in labor costs for excavating work between 27c per cubic yard as provided in claimant's proposal and 31c per cubic yard claimant alleges it was required to pay for this work.

Claimant urges four reasons why it should recover here. First, that its acceptance of the final payment was not a release. Second, that the State is bound by its contracts the same as an individual. Third, that the State is bound by estoppel. And finally, that all acts of public officers are presumed to be regular, in the absence of convincing contrary evidence.

The respondent opposes this award and takes the position (1) Claimant had no right to additional compensation which arose before the contract was signed; (2) Claimant had no right to additional compensation arising out of the contract itself; (3) No right to extra compensation arose after the contract was signed; (4) Since no right to extra pay arose in claimant before or after the contract was executed the complaint should be dismissed.

Ernest A. Monson, Secretary of claimant corporation, was the only witness called to support the allegations of the complaint. During the course of his examination he identified each telegram and letter as set forth above. Most of his testimony was based on heresay evidence, was incompetent and that portion will not be considered by this court.

The claimant in its voluminous brief cites many cases in support of this claim. All of the cases cited, including a recent opinion of this court, *Hartmann-Clark Brothers Company* vs. *State*, #3290, deal with alleged claims which arose after the execution of the contract and are not in point.

The evidence and exhibits in this case show that claimant was an experienced contractor, was acquainted with the standard specifications as contained in the proposals and was familiar with section 2.9 and 2.11(a), referred to in the telegram of June 14, 1937, to claimant signed by Ernst Lieberman. Yet in the face of this knowledge, claimant continued to permit his bid to stand as filed on June 10, accepted the job after it was awarded to him. Claimant completed the work, cashed the final voucher without reservation, other than the informal conversations held with some of the personnel of the Department and its letter of December 31, 1938. This was an attempt to reserve some purported right although paragraph 9.8 of the specifications specifically stated that "Acceptance by the contractor of the last payment shall operate as and shall be a release to the Department for all claims or liability under this contract."

Claimant contends that it was induced to enter into this contract by two representations which the Department allegedly made. First, that if it did not sign the contract its certified check would be forfeited. The burden of proof was on the claimant to prove this contention. There is no proper proof in the record that any such threat had been made by the respondent. Second, that after completing the contract it would be able to recover an additional sum by an action in the Court of Claims. This too the claimant has failed to establish by a preponderance of the evidence. Certain conversa-

45

tions were presumably held between Mr. Pickus, the president of the corporation, and some of the personnel of the Highway Department prior to and subsequent to the awarding of the job to the claimant. These conversations were referred to by witness Monson, but he was not present at any of them and presumably his testimony was heresay.

Claimant points however to a letter it received from Mr. C. M. Hathaway, dated November 9, 1938, which was long after the claimant had started construction under its contract. It shows conclusively that there was no understanding between the respondent and the claimant that it should be paid an additional sum of money. It specifically informs claimant that "although there may be a possibility of reopening this proposition, it would appear to me that it might be one of those instances which would have to be taken up with the Court of Claims. *Due to the fact that the State has no legal jurisdiction to act other than it did.*"

It shows conclusively that there was no understanding or that there was any argument that would justify this claimant in accepting this work and proceeding with it with any expectation that the State had the power legally to pay it an additional sum over and above the contract price as submitted in its bid. This letter was admitted in evidence without objection being interposed by either side.

It is noteworthy that under article 2.9 of the standard specifications, as contained in the proposal, this claimant could have withdrawn its bid at any time between June 10 and August 24 if it had submitted its request in writing to the respondent. If it had done so there would have been no question before this court. Claimant, however, elected not to withdraw the bid, but

attempted to substitute a higher figure for its original bid. If this claimant suffered a loss it invited it and is now in no position to complain relative to its own conduct.

After a careful reading and analysis of the record in this case we must come to the conclusion that the claimant has no right of recovery.

Award denied.