(No. 5221—

DARLENE MARTS, a Minor, by Alexena Marts, her Mother and Next Friend, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 12, 1968.*

DAVIDSON, PAVALON AND SCHULTZ, Attorneys for Claimant.

WILLIAM G. CLARK, Attorney General; GERALD S. GROBMAN and SHELDON RACHMAN, Assistant Attorneys General, for Respondent.

PERLIN, C.J.

Claimant Darlene Marts, a Minor, represented by Alexena Marts, her mother, seeks recovery of $25,000.00 for injuries suffered when the claimant fell into a pit of burning leaves at the Stephen A. Douglas Memorial Park at 35th and Leif Erickson Drive in Chicago, Illinois.

The evidence presented establishes the following facts:

On Sunday, October 13, 1963, at about 3:00 P.M., claimant, Darlene Marts, aged 6½ years, went with her uncle, Gordon Widlund, her sister, Marie, aged 8 years, and her brother, Jerry, aged 10 years, to the Stephen A. Douglas Memorial Park. While the children were playing in the park Darlene slipped into a hole of hot ashes, and was seriously burned on her legs.

Darlene, who was 9 years old at the time of the hearing, testified that she saw ashes in the hole but no flames. There was nothing around the hole, no barricades or logs, and the custodian, Herman Williams, employed by the State of Illinois Department of Conservation said nothing to them while they were in the park. Darlene further testified that there was water coming from a hose near the hole, which made the grass near

the hole slippery, and caused her to slip into the hole. She was pulled out of the hole by her uncle who poured water on her, and she was subsequently taken to Michael Reese and Children's Memorial Hospitals. She stayed in Children's Memorial Hospital for five weeks. She was in first grade at the time of the accident, and had to repeat the first grade. She further stated that she had been to the park three or four times before the day she was hurt, and had never seen the hole before, although she had played in the area where the hole was located.

Interrogatories established that the hole in question was dug by Herman Williams around October 10th or 11th, and a fire was lit in the hole on October 12, 1963.

Herman Williams testified as follows: His duties were to take care of the park grounds, and assist and lecture the visitors. The park is open from 9:00 A.M. to 5:00 P.M., and during that time he does not do maintenance work. Maintenance work performed after working hours includes the raking and burning of leaves. He dug the hole in question after 5:00 P.M. on October 10, 1963. Williams described the hole as five feet in diameter, and about six or seven inches deep. He put up a barrier around the hole, which consisted of dead logs about two feet high with six baskets around the hole, and a sign, which read, "Leaves Burning, Keep Away." The sign had a green background with orange letters, was about two feet high, and was nailed to a plank about five feet high. The sign was not removed between October 10 and October 13. After burning leaves on October 12, 1963, he raked the hole to see that there were no leaves burning or smoking. He further stated that George Harper, the man who installed the sprinkler sys-

tem, helped him put up the barrier. The day of the accident he had reprimanded the children for jumping in the flowers, and had told the man accompanying them that there was a trash hole where leaves were burned. On cross examination, Williams stated that the park is open to the public, and, when people are in the park, they are allowed to wander around the grounds. After he raked the leaves on October 12, 1963 he did not put any water into the hole, but there was water running from a hose, which was placed 50 feet from the hole. The circle of logs were two and a half feet from the edge of the hole, and the baskets were up against the logs. He did not have to move the baskets to put leaves in the hole, but just threw the leaves over the baskets and logs. He further testified that, after the child was burned, the logs were in the same position.

His deposition stated that he knew that there were smoldering hot ashes in the hole on the morning of Sunday, October 13, 1963, when he checked the fire. The report filled out by Mr. Williams the day of the occurrence did not mention a warning sign or a verbal warning.

George Harper testified that he assisted Mr. Williams in erecting a barricade around the hole in question on October 10, 1963, but that on Sunday, October 13, 1963, he did not notice the sign or the logs, and did not have occasion to observe the hole. He further stated that the baskets did not completely surround the hole, and the logs were only in front of the hole.

Gordon Widlund testified that he had driven claimant, claimant's mother, sister and brother to the park, and that claimant's mother went to visit her oldest son at St. Joseph's Home for the Friendless across from the park while he took the children to the park. He made

paper airplanes for the children, which they were sailing. He was about 25 feet from Darlene when he saw her go into the hole. He described the hole as about 4 or 5 feet in diameter, and about three or four feet deep. Widlund further testified that there was nothing around the hole but a bush and a tree. There was a wastebasket further away from the hole, but no barricades or signs. He stated that he did not converse with the caretaker at any time prior to seeing Darlene in the hole, except that he warned him to keep off the flowers, and that no one in the park told him about the hole, the ashes, or fire in the hole. The wet area around the hole extended to the hole from about twenty feet away.

Claimant charges that respondent breached its duty to exercise ordinary care for the safety of claimant by negligently creating a dangerous condition upon its premises, which foreseeably exposed children of tender years to serious injury. Claimant further contends that a minor under the age of seven years cannot, under law, be found to be contributorily negligent.

In the opinion of this Court, claimant has proved by a preponderance of the evidence that respondent's negligence caused the injuries suffered in the instant case. The State owes a duty to the public to exercise reasonable care in maintaining and supervising its parks. *Murray* vs. *State of Illinois,* 24 C.C.R. 399; *Kamin* vs. *State of Illinois,* 21 C.C.R. 467; *Stedman* vs. *State of Illinois,* 22 C.C.R. 446.

Respondent did not dispute that the accident occurred in an area of the park open to the public during the hours the public was invited. That the precautions allegedly taken to prevent a child from falling into the trap of smoldering leaves were insufficient was proved

by the fact that a child did indeed fall into the hole. The verbal warning, which the caretaker testified he gave, was uncorroborated by the facts of the case, and was contradicted by the other witnesses. He did not mention a warning in the report of the accident, which was written on the day of the occurrence.

The remaining question concerns the extent of damages suffered by claimant as a result of her injuries. Dr. B. Harold Griffith, a plastic and reconstructive surgeon, testified that he treated claimant, and first examined her after her admission to Children's Memorial Hospital in October, 1963. She had "burns of the hands, legs and the left foot, which appeared at the time to be deep second-degree areas of third-degree." The hands had a superficial second degree burn. The doctor explained that a third degree burn is a full-thickness destruction of the skin, and, in some instances, tissue beneath the skin. Fifteen days after her admission to the hospital the dead tissue was cut away, and subsequently a skin grafting operation was performed on both legs whereby "under general anesthesia the full thickness burns of the lower extremities were covered with skin grafts taken from the left thigh." Dr. Griffith further testified that he last examined claimant on December 4, 1965, and at that time she had scars on both lower extremities, which were permanent. The doctor also explained that injury to scar tissue may cause difficulty because a wound would heal slowly and be an ulcer. He testified that a child may at times outgrow the scars resulting in a limitation of the growth of the subcutaneous tissue and muscle bone. Claimant was examined on behalf of respondent by Dr. John A. Boswick of the Cook County Hospital. His report, admitted into evidence as respondent's exhibit, stated that "the cosmetic or func-

tional results could not be improved by further surgery at this time."

The evidence further shows that claimant was released after five weeks at Children's Memorial Hospital, but remained an out-patient of the Plastic Surgery Clinic until September 9, 1964. The hospital bill was $1,923.61, and was paid by the County of Cook, Department of Public Aid, of which $1,907.47 has been paid. Photographs admitted into evidence show claimant's legs as covered with extensive scar tissue. The prognosis is that there is little which can be done to relieve this condition. The child was also set back one year in school as a result of the accident.

Claimant, Darlene Marts, is hereby awarded the sum of $12,000.00.