(Nos. 77-CC-0759 and 77-CC-0827— )

KLINGBERG SCHOOLS, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed December 31, 1979.*

NICHOLAS D. CHABRAJA and DAVID J. BRADFORD, both for Claimant.

WILLIAM J. SCOTT, Attorney General (RICHARD J. GROSSMAN, Assistant Attorney General, of counsel), for Respondent.

HOLDERMAN, J.

The above two cases have been consolidated and were tried as one case.

Lengthy motions for summary judgment filed by both parties have heretofore been disposed of by an order by then-Chief Justice Polos dismissing both motions for summary judgment. This order also disposes of two points raised by Claimant. The order of April 1, 1979 denied the motion for summary judgment filed by Claimant and a similar motion filed by Respondent. This order also found that any settlement agreement or stipulation entered into by a State agency is subject to review by this Court, citing *Lewson v. State* (1925), 5 Ill. Ct. Cl. 80. In the same order, the Court disposes of a point raised by Claimant that an award should be made based upon the theory of quantum meruit.

The facts in this case are as follows: The Claimant, Klingberg Schools, is an Illinois not-for-profit corporation, and has been operated as a residential school for

the mentally retarded for approximately 12 years. It is licensed by the Illinois Department of Mental Health and Developmental Disabilities (DMHDD) which is authorized by statute to place patients in Klingberg and similar facilities. Through individual care grants, DMHDD reimburses facilities for the care and treatment of patients entitled to receive financial assistance. Most of the patients at Klingberg receive such aid. The State of Illinois is the primary source of income for most of the patients at Klingberg Schools.

Klingberg's status is that of a "provider agency" from which State agencies purchase care of individual patients under an "individual care grant" system. The type of care involved in this claim has been furnished by Claimant to the State for several years.

The complaint of the Claimant is based upon a request for monies that it insists is rightfully due Claimant.

It appears from the record that for several years the Claimant had furnished services to the State of Illinois, it had billed the State for the services at the amount agreed upon, and these amounts were paid to Claimant and accepted by Claimant. Claimant is now claiming that additional monies are due on the theory that the services that were furnished the Respondent were paid for at such a low rate that a substantial amount of money was lost by Claimant.

It is evident that there was a contract or agreement between the parties hereto whereby the Respondent agreed to pay Claimant certain definite sums for certain services that were rendered. The total amount involved in the two claims is approximately $196,000.00.

From the record, it appears that the State paid Claimant from July 1, 1975 to December 31, 1975 on the

basis of $16.87 per resident per day. Claimant alleges that the actual cost during that period was $27.69 per resident per day. This figure was not substantiated by an audit made later by the State.

The per diem rate provided by the State from January 1, 1976 to June 30, 1976 was $19.40 per resident per day.

Upon receiving the payments based upon the rates agreed upon, Claimant, in October 1975, contacted Respondent and requested an immediate increase in the State per diem rate.

Claimant started an action mandamus in the Circuit Court of Cook County to try and compel Respondent to pay the various variances between its alleged costs and payments received. This suit was started in May 1976, and it was in March 1977 that DMHDD and Claimant entered into a so-called settlement agreement. Under this agreement, Klingberg agreed to make certain policy changes, eliminate certain expenditures, and dismiss the mandamus suit. In the agreement, DMHDD promised, among other things, to support a claim by Klingberg Schools to be filed in the Court of Claims seeking compensation at the rate of $23.86 per diem for the fiscal year beginning July 1, 1975 and ending June 30, 1976.

It was later agreed upon by the Claimant and Respondent that Claimant's actual cost was $22.40 per resident per day, which figure is less than the amount actually claimed by Claimant.

It is Claimant's contention that the State is liable to Klingberg Schools for the amount tentatively agreed upon between the parties in the settlement agreement and the fact that monies had already been paid and accepted was of no consequence.

It is Respondent's contention that Claimant and Respondent entered into a contract, which has been performed by both parties, and cannot be revised by a subsequent agreement. Respondent also contends that Claimant's action is barred by the doctrine of accord and satisfaction and by statutory and constitutional provisions. It further contends that the so-called settlement agreement of March 25, 1977 is unenforceable because it requires payments in excess of the lapsed appropriation for that fiscal year which had been diminished by a transfer of funds to the Department of Public Aid. It also cites numerous cases, statutory provisions, and Court of Claims rulings to the effect that any contracts in excess of appropriations are null and void.

After the action was started by Claimant in the Court of Claims, a stipulation was agreed upon wherein certain facts were stipulated and the Court was requested to make a decision based upon the stipulated facts.

During the proceedings, an audit was made by the State of Illinois which was to the effect that the rates should have been smaller—in the neighborhood of $20.01. This figure is somewhat indefinite due to the fact that it is the State's contention that certain amounts allowed in this figure were excessive and were amounts that should not have been allowed. The final figure in the stipulation, as shown by Exhibit B, was $23.86 per resident per day.

The entire question, in the opinion of the Court, is whether or not the State is obligated to pay an increase in the per diem rate even though the claim was paid at the prevailing per diem rate upon the figure agreed upon between the parties, and was accepted by Claimant for services rendered to Respondent.

The Court calls attention to the fact that the action

on the part of Claimant was voluntary in all of these matters, the contract was voluntarily entered into between the parties, Claimant was under no obligation whatsoever to provide these services, the figure agreed upon was accepted by both parties, and the payment of said agreed-upon figure was accepted by Claimant. It was only after the billing and acceptance of the amount agreed upon that Claimant raised the question of additional compensation.

As previously stated, the question of quantum meruit raised by Claimant has been disposed of as has the question of whether or not an agreement such as the Claimant is relying upon here can be passed upon by the Court of Claims.

In *Pickus Engineering and Construction Co. v. State of Illinois* (1943), 13 Ill. Ct. Cl. 39. The Claimant, a general business contractor, submitted a proposal to do work described in a general offer set forth by a department of the State. The State accepted the contractor's proposal. Subsequent to the State's acceptance, the contractor wanted to revise his bid but agreed to do the work according to his initial proposal. The Claimant who performed the work was issued a warrant and cashed the same. The Claimant then sought an increase in compensation, filing suit in the Illinois Court of Claims based on his allegation that his labor costs exceeded the contract price.

The Respondent argued that the Claimant had no right to receive additional compensation under the contract. The Court held that the contract was determinative of the matter and denied the Claimant additional relief.

In *Worden-Allen Corp. v. Illinois* (1947), 16 Ill. Ct. Cl. 138, the Claimant contended that the State caused a substantial delay in the performance of a contract be-

tween them. The Claimant alleged that as a result of the delay, he had to expend an additional $1200.00 to complete his part of the contract. Payment was tendered after his completion of the contract. The Claimant endorsed and cashed the check. Respondent contended that the cashing of the warrant constituted a full release from any and all actions arising out of the contract, and the Court held that payment under the contract constituted a full release. The Court further stated that no award can be made on a contract with the State once payment has been accepted.

Respondent cites the case of *Schutte & Koerting v. State of Illinois* (1957), 22 Ill. Ct. Cl. 592 as authority for three propositions: (1) that a State agency cannot contract in excess of its appropriations unless expressly authorized by law so to do; (2) that every claim or contract if not within the amount of appropriation already made is void; and (3) that where a contract is prohibited by law, there can be no recovery on a quantum meruit basis.

In 26 Ill. Ct. Cl. 256, it states that where the defendant is the State, the doctrine of quantum meruit does not apply.

The Claimant alleges that the State of Illinois had an absolute duty to set forth "pay schedules" which are commensurate with the "actual cost of treatment" of the DMHDD-placed patients and further alleges that compensation at a rate below its "break even" point amounts to a confiscation, which violates the due process clause of the Illinois and United States Constitutions. Claimant cites *D. C. Transit, Inc. v. Washington Metropolitan Area Transit Comm'n.*, 466 F.2d 394, 418. There is a vast difference between the *Transit* case and the present case. In the *Transit* case, the Claimant was a public utility which could be forced to provide the services even at a

loss. In the present case, the supplier of the services was not under any law that would compel it to provide services of any kind or character. It was strictly a voluntary act which was entered into with a full knowledge of the circumstances and was not under compulsion by the Respondent to do anything.

Claimant also raises the point that the State is estopped by the actions of its officers and agents and therefore must honor the settlement agreement. The principal that the State cannot be estopped on a contract, entered into by an agent without authority, is set forth in *Dement v. Rokker*, 126 Ill. 199 where the following language is used:

"The State is never estopped, as an individual or private corporation may be, on the ground that the agent is acting under apparent authority which is not real—the conclusive presumption being that his powers are known rendering such a consequence impossible."

*Schoenig v. State*, 11 Ill. Ct. Cl. 634, lays down the rule that even if a director has authority to act in entering into a contract, estoppel is restricted when Claimant shows that its application is necessary to prevent a gross injustice.

In *People v. Woods*, 354 Ill. 224, the Court directly confronted the question of whether estoppel could be asserted against the State. The Court summarized, stating that the general rule is that neglect or omissions of public officers cannot work an estoppel against the State. The Court also stated that in exceptional cases, the doctrine of estoppel can be applied in a very limited sense.

The Court is of the opinion that the present case is not an extraordinary case in which the doctrine of estoppel could be applied. It is the Court's opinion that this is merely a case of a contract being entered into between the parties, the terms lived up to by both

parties, payment made and accepted, and after the acceptance of said payment in full, a request made by Claimant for additional compensation. It is unfortunate that instances like this happen because of the lack of knowledge on the part of some of the State's employees in not recognizing the limitations of their office.

This Court is of the opinion that the decision in 10 Ill. Ct. Cl. 497, summarizes the present situation, and we quote from that decision:

"Counsel for Claimant filed an able and persuasive reply brief but we are compelled to hold that whoever deals with a municipality does so with notice of the limitations on it or its agents' powers. All are presumed to know the law, and those who contract with it or furnish it supplies do so with reference to the law, and, if they go beyond the limitations imposed, they do so at their peril. This may seem unjust to the Claimant but the answer to that is: That it is better that a private individual suffer as plaintiff must do in this case than have this Court let down the bars and permit statutory enactments for the benefit of the public at large to be ignored so that the unscrupulous may unfairly and unjustly obtain public moneys. We cannot recognize or put the stamp of approval on the actions of the State officials in entering into such an informal contract."

Award denied.